IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-00492-RBJ-KLM

JAMES TILLMON,

     Plaintiff,

v.

COUNTY OF DOUGLAS, in its official capacity,
TONY G. SPURLOCK, Douglas County Sheriff, in his official and individual capacities,
J. YOUNG, Sergeant in Douglas County, in his official and individual capacities,
PENRY KIETH, of the Douglas County Sheriff's Office, in his official and individual capacities,
JOHN DOE(S), of the Douglas County Sheriff, in his individual capacity, and
JOHN AND/OR JANE DOES, of the Douglas County Deputy Sheriff Medical Department, in his, her, or their individual and official capacities,

     Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

     This matter is before the Court on Defendants' **Motion to Dismiss** [#15][1] (the

"Motion").  Plaintiff, who proceeds as a pro se litigant,[2] filed a well-written Response [#26]

---

[1] "[#15]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's electronic case filing and management system (CM/ECF).  This convention is used throughout this Recommendation.

[2] The Court must construe liberally the filings of pro se litigants.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out [the pro se litigant's] complaint or construct a legal theory on [his] behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110).  In addition, pro se litigants must follow the same procedural rules that govern other litigants.  *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

in opposition to the Motion, and Defendants filed a Reply [#31].[3]  The Motion has been

referred to the undersigned for recommendation pursuant to 28 U.S.C. § 636(b) and

D.C.COLO.LCivR 72.1(c).  *See* [#16].  Having reviewed the entire case file and being

sufficiently advised, the Court respectfully **RECOMMENDS** that the Motion [#15] be

**GRANTED**.

## I. Summary of the Case[4]

At all times relevant to this lawsuit, Plaintiff was confined at the Douglas County

Detention Center ("DCDC") in Castle Rock, Colorado.  *See generally Compl.* [#1].  Plaintiff

generally asserts that Defendant Tony Spurlock ("Spurlock") "operates racial discriminant

[sic] practices and customs within the Douglas County Sheriff Department, and was aware

that Plaintiff was being harassed based on his race and ethnicity as a Black man."  *Id.* at

12.  Plaintiff states that "[t]he racial slurs and epithets [were] directed and targeted towards

him, at times, from both, Douglas County Officers" as well as inmates, and that this "is a

culture that is encouraged, condoned or custom" at DCDC.  *Id.* at 13.  Plaintiff states that

this behavior began "from the moment Plaintiff was transported by the Deputies" from

intake to the general population area of the facility.  *Id.* at 14-15.

Plaintiff further states that, "[i]nitially, after arriving at [DCDC], Plaintiff would

regularly attend the Med-line expecting to receive his already prescribed mental-health

---

[3]  To the extent Plaintiff argues that the Motion [#15] was untimely filed, his argument is
without merit.  *See Response* [#26] at 3-5.  Defendants were served on March 23, 2018.  *See
Process Receipt and Return* [#14].  Defendants filed the present Motion [#15] nineteen days later
on April 11, 2018.

[4]  The Court construes all of the well-pled allegations in the Complaint in favor of Plaintiff.
*See Barnes v. Harris*, 783 F.3d 1185, 1191-92 (10th Cir. 2015).  The Court notes at the outset that
the level of detail Plaintiff provides about the various aspects of his claims is uneven.

medication: 'Trazadone.'" *Id.* at 7. "Plaintiff believed the Trazadone prescription would have automatically followed him" from other facilities where he had been held, as it had in the past, but, despite his repeated inquiries and attempts to obtain his medication, the various unidentified medical personnel "wholly refused and failed to attend to or treat Plaintiff's mental health needs the entire time he was housed in [DCDC], . . . never receiv[ing] his prescription or any other mental health medication to treat his mental health diagnosis" while there. *Id.* at 8. As a result, Plaintiff regularly suffered from anxiety and panic attacks. *Id.* Plaintiff notes that while he was treated with Trazadone at other facilities, he never received a write-up. *Id.* at 9. However, during his roughly thirteen-month stay at DCDC without his medication, he received about twenty-three write-ups. *Id.*

On November 26, 2015, Plaintiff's hand was broken in an altercation with another inmate. *See id.* Despite his injury, his pain, and his repeated requests to unidentified deputies for medical care, Plaintiff was placed in segregation for eight hours before a nurse saw him and determined he needed to be sent to Castle Rock Adventist Hospital for proper treatment. *See id.* at 6-7.

Plaintiff incorporates into the Complaint a list of disciplinary actions he incurred prior to December 8, 2015, which covers most of his time at DCDC, although no specific dates are provided for these incidents: (1) a 15-day lockdown for creating/participating in a riot/disturbance; (2) a 5-day lockdown for not wearing his wristband, for disobeying an order, and for interfering with headcount; (3) a 10-day lockdown for disobeying an order and for using offensive language; (4) a 30-day lockdown for not cooperating with lockdown, for threatening, for using offensive language, and for throwing items; (5) a 48-hour lockdown for disobeying an order and for making excessive noise; (6) a 24-hour lockdown

for violating food service rules; (7) a 24-hour lockdown for placing an item on a vent after having previously received a verbal warning; (8) a 48-hour lockdown for interfering with lockdown; (9) a 2-day lockdown for threatening and for making excessive noise; (10) a 24-hour lockdown for violation of food service rules; (11) a 48-hour lockdown for not wearing/removing his wristband; (12) a 5-day lockdown for creating a disturbance, interfering with lockdown, possessing contraband, and interfering with duties of staff; (13) a 10-day lockdown for creating a disturbance, for interfering with duties of staff, and for threatening; (14) a 1-day lockdown for threatening and for disobeying an order; (15) a 48-hour lockdown for not wearing/removing his wristband; (16) a 3-day lockdown for corresponding with separated inmates, for excessive noise, for making threats, and for placing hands on deputy station window; (17) a 3-day lockdown for throwing items; (18) a 15-day lockdown for assault on inmate and for entering another's cell; (19) a $5.00 monetary penalty for destruction of wristband; and (20) a 2-day lockdown for "entering a designated"[5] and for refusing to obey an order. *See id.* at 13 (incorporating [#715] at 5 in Criminal Action No. 14-cr-00231-WJM). Plaintiff states that the write-ups were "racially targeted" and "petty," and that they included incidents where, for example, he (1) gave another inmate sugar, (2) gave another inmate a piece of bread off his tray, and (3) put "a small piece of tissue in his vent to dispense a fragrant smell into his cell after he had cleaned it." *Compl.* [#1] at 10-11. Plaintiff asserts that Defendant Keith Penry ("Penry") failed to maintain and produce "video evidence regarding the issues surrounding Plaintiff's institutional violation convictions and assaults," despite Plaintiff's criminal counsel

---

[5] This action is unclear but implies that Plaintiff entered some space into which he was not permitted.

requesting a copy of the video(s).  *Id.* at 11.

Plaintiff asserts that Defendant Young was a Sergeant Deputy who was "the hearing and sanctioning Officer in Plaintiff's multiple and repeated disciplinary hearings," and that in each hearing, "she was aware that Plaintiff was the victim of racial discrimination and was being targeted, provoked and attacked by the [w]hite inmates because he was regularly placed in pods that consisted of 22 or 23 prisoners and was the only African-American in each . . . ."  *Id.* at 9.  Plaintiff notes that he was found guilty by Defendant Young on every occasion, that he "never received any prior written Notice of Charges within 24 [hours] of the scheduled hearing," and that his appeals were ignored.  *Id.* at 10.

On February 24, 2016, Plaintiff was sentenced in the criminal case for which he had been held at DCDC.  *See* [#812] in Criminal Action No. 14-cr-00231-WJM.  In imposing the sentence, the Court granted Plaintiff's motion for a downward variance from the federal minimum sentence, in part "due to the harshness of the time spent in pretrial confinement . . . ."  *Compl.* [#1] at 14 (quoting [#825] at 3 in Criminal Action No. 14-cr-00231-WJM). Plaintiff was shortly thereafter transferred from DCDC.[6]  *See generally Compl.* [#1] at 4, 13, 16.

As a result of these incidents, Plaintiff filed this lawsuit on February 27, 2018, against Defendant County of Douglas, Defendant Spurlock, Defendant Penry, Defendant Young, and unidentified Doe Medical Defendants and Doe Deputy Defendants.  *Id.* at 1-3.  Plaintiff asserts three claims: (1) Fourteenth Amendment due process and equal protection violations on the basis of racial discrimination; (2) Fourteenth Amendment and Eighth

---

[6]  Plaintiff clarifies in his Response that he left DCDC on February 29, 2016.  *See* [#26] at 2. However, the exact date he left the facility is immaterial to resolution of the present Motion [#15].

Amendment violations on the basis of lack of adequate medical care; and (3) Fourteenth

Amendment due process and equal protection violations in connection with the disciplinary

proceedings against him.[7]  *Id.* at 14-17.  Plaintiff seeks damages and an order enjoining

Defendants from future violations of his civil rights.  *Id.* [#1] at 18.  In the present Motion

[#15], Defendants seek dismissal of all of Plaintiff's claims.

## II.  Standards of Review

### A.  Federal Rule fo Civil Procedure 12(b)(1)

The purpose of a motion to dismiss pursuant to Rule 12(b)(1) is to test whether the

Court has jurisdiction to properly hear the case before it.  Because "federal courts are

courts of limited jurisdiction," the Court must have a statutory basis to exercise its

jurisdiction.  *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); Fed. R. Civ. P. 12(b)(1).

Statutes conferring subject-matter jurisdiction on federal courts are to be strictly construed.

*F & S Const. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964).  "The burden of

establishing subject-matter jurisdiction is on the party asserting jurisdiction."  *Id.* (citing

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

A motion to dismiss pursuant to Rule 12(b)(1) may take two forms: facial attack or

---

[7]  Plaintiff briefly alludes to the First Amendment and the Sixth Amendment, *see Compl.* [#1] at 18, but he clarifies in his Response that his claims are only based on alleged violations of his Eighth and Fourteenth Amendment rights.  *See* [#26] at 1.  Plaintiff also lists 42 U.S.C. §§ 1981, 1985, 1986, 1987, and 1988 in the jurisdictional portion of his Prisoner Complaint, but he does not assert any specific claims under those statutes.  *See* [#1] at 3; *see also, e.g., Myers v. Unknown Unidentified Mailroom Personnel of the Bureau of Prisons Mailroom Staff at FCI-Englewood*, No. 13-cv-03491-BNB, 2014 WL 11878444, at *1 (D. Colo. Mar. 18, 2014) (noting the same and therefore only addressing the plaintiff's claims under 42 U.S.C. § 1983).  The Court does not further address 42 U.S.C. §§ 1986, 1987, and 1988 because there are no cognizable claims asserted under any of these statutes.  Plaintiff does briefly mention 42 U.S.C. §§ 1981 and 1985 elsewhere in his filings, however, and so the Court addresses the potential claims underlying those statutes below.

factual attack. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). When reviewing a facial attack on a complaint, the Court accepts the allegations of the complaint as true. *Id.* By contrast, when reviewing a factual attack on a complaint, the Court "may not presume the truthfulness of the complaint's factual allegations." *Id.* at 1003. With a factual attack, the moving party challenges the facts upon which subject-matter jurisdiction depends. *Id.* The Court therefore must make its own findings of fact. *Id.* In order to make its findings regarding disputed jurisdictional facts, the Court "has wide ranging discretion to allow affidavits, other documents, and a limited evidentiary hearing." *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990); *Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir. 1987)). The Court's reliance on "evidence outside the pleadings" to make findings concerning purely jurisdictional facts does not convert a motion to dismiss pursuant to Rule 12(b)(1) into a motion for summary judgment pursuant to Rule 56. *Id.*

## B. Federal Rule of Civil Procedure 12(b)(6)

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted"). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind,* 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted). To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a

complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 570)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (brackets in original; internal quotation marks omitted).

To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a factual allegation has been stated, "but it has not show[n][ ]that the pleader is entitled to relief," as required by Fed. R. Civ. P. 8(a). *Iqbal*, 552 U.S. at 679 (second brackets added; citation and internal quotation marks omitted).

### III.  Analysis

**A.  Purported Class Action Relief**

The Court first addresses Plaintiff's brief assertion that he brings this lawsuit so that "Defendants be enjoined from future violations of Plaintiff's *and other similarly situated*

*Protected Class Members'* rights under the First, Sixth, Eighth and Fourteenth Amendments." *See Compl.* [#1] at 18 (emphasis added).

"Generally, a non-lawyer does not possess sufficient legal training or skills to represent others in class litigation." *Ransom v. U.S. Postal Serv.*, 170 F. App'x 525, 528 (10th Cir. 2006). "A litigant may bring his own claims to federal court without counsel, but not the claims of others." *Fymbo v. State Farm Fire & Cas. Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000). "The rule against pro se representation of others is particularly important in class actions because class litigation must comply with the complex and demanding requirements of Rule 23 of the Federal Rules of Civil Procedure." *Ransom*, 170 F. App'x at 529. "Indeed, Rule 23(g) requires appointment of class counsel, unless otherwise provided by statute." *Id.* "Furthermore, a judgment in a class action may foreclose other class members from later bringing the same claims." *Id.* The Tenth Circuit Court of Appeals has stated that, in the absence of any statute providing otherwise, it "will not entrust those claims to a non-lawyer." *Id.* In short, "a pro se cannot litigate on behalf of a class." *Id.* at 528.

Accordingly, to the extent Plaintiff is asserting class claims in this action, the Court **recommends** that those class claims be **dismissed without prejudice**.[8] *Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir.1990) (stating that prejudice not should attach to a dismissal when the plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues").

---

[8] To be clear, the dismissal without prejudice means that the purported class members may assert their claims, if they so desire, not that Plaintiff may refile claims on their behalf as a pro se litigant.

**B.      Mootness of Injunctive Relief**

The Court next addresses Plaintiff's brief assertion that he brings this lawsuit so that "Defendants be enjoined from future violations of Plaintiff's . . . rights under the First, Sixth, Eighth and Fourteenth Amendments." *See Compl.* [#1] at 18.

"When a prisoner files suit against prison officials who work in the institution in which he is incarcerated, seeking declaratory and injunctive relief on the basis of alleged wrongful conduct by those officials, and then that prisoner is subsequently transferred to another prison . . . , courts are presented with a question of possible mootness." *Jordan v. Sosa*, 654 F.3d 1012, 1027 (10th Cir. 2011). "Where the prisoner's claims for declaratory or injunctive relief relate solely to the conditions of confinement at the penal institution at which the prisoner is no longer incarcerated, courts have concluded that they are unable to provide the prisoner with effective relief." *Id.* "Because a prisoner's transfer . . . signals the end of the alleged deprivation of his constitutional rights, an entry of equitable relief in his favor would amount to nothing more than a declaration that he was wronged, and would have no effect on the defendants' behavior towards him." *Id.* (internal quotation marks, citation, and alterations omitted). "Consequently, courts have routinely dismissed such penitentiary-specific . . . claims as moot." *Id.*

Plaintiff was incarcerated at DCDC while a pretrial detainee. Shortly after his sentencing, he was transferred out of DCDC. When he initiated this lawsuit, he was incarcerated at Crowley County Correctional Facility. *See Compl.* [#1] at 1. He is currently incarcerated at the Federal Correctional Institution, Englewood. *See Letter* [#32]. There is no indication in the record that he has ever been returned to DCDC or that there is a non-theoretical probability that he could be returned there in the future. Plaintiff states in his

Response that "his mental health treatment of Trazadone was reinstated . . . immediately after arriving at the next place of imprisonment following" DCDC.  *See* [#26] at 16.  His other claims all involve treatment by staff at DCDC, including poor treatment allegedly caused by racial discrimination and allegedly procedurally deficient disciplinary hearings. Because Plaintiff seeks injunctive relief from prison officials only located at DCDC, and because there is no indication that he is likely to ever be returned to DCDC, the Court finds that Plaintiff's claims are moot to the extent he seeks injunctive relief.

Accordingly, the Court **recommends** that Plaintiff's claims be **dismissed without prejudice** to the extent he seeks injunctive relief.  *See Lewis v. Burger King*, 398 F. App'x 323, 325 n.3 (10th Cir. 2010) (stating that dismissal due to mootness must be without prejudice).

## C.     Defendant County of Douglas

Defendant County of Douglas moves to dismiss all claims against it, arguing that the Court lacks jurisdiction over it.  *Motion* [#15] at 3-4.  Defendant County of Douglas argues that "Plaintiff has named 'County of Douglas' as a defending party rather than the 'Board of County Commissioners of Douglas County,' as required by C.R.S. § 30–11–105, to establish jurisdiction."  *Id.* at 4.

Pursuant to Colo. Rev. Stat. § 30–11–105, "[i]n all suits or proceedings by or against a county, the name in which the county shall sue or be sued shall be "[t]he board of county commissioners of the county of . . . ."  "This statutory provision provides the exclusive method by which jurisdiction over a county can be obtained.  An action attempted to be brought under any other designation is a nullity, and no valid judgment can enter in such

a case." *Gonzalez v. Martinez*, 403 F.3d 1179, 1187 n.7 (10th Cir. 2005) (internal quotation marks and citation omitted); *see also McCoy v. Deutsche Bank Nat'l Tr. Co.*, No. 15-cv-00613-RBJ-KLM, 2016 WL 1047822, at *4 (D. Colo. Feb. 23, 2016) (finding that the Court lacked personal jurisdiction over Arapahoe County because the plaintiffs had not complied with the statutory requirement in bringing their constitutional claims, including a § 1983 claim); *see also Handy v. Cummings*, No. 11-cv-00581-WYD-KMT, 2012 WL 4442751, at *1 (D. Colo. Sept. 26, 2012) (dismissing Arapahoe County as a defendant because the plaintiff did not name the Board of County Commissioners of Arapahoe County); *Wilkenson v. Colorado*, No. 13-cv-01469-CMA-KLM, 2013 WL 6978510, at *5 (D. Colo. Dec. 17, 2013) (explaining that the Court did not have jurisdiction over the county because the plaintiff did not properly name the Board and County Commissioners of the County of Mesa, but explaining that "a simple amendment" to the complaint "would easily cure this technical defect"). Because Plaintiff improperly brings his claims against "County of Douglas" and not the board of county commissioners, the Court lacks jurisdiction to make any determination of the merits of the claims with respect to this Defendant.

Accordingly, the Court **recommends** that the Motion [#15] be **granted** to the extent that all claims asserted by Plaintiff against Defendant County of Douglas be dismissed without prejudice. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216-17 (10th Cir. 2006) (explaining that a dismissal on jurisdictional grounds should be without prejudice).

**D.      42 U.S.C. § 1981**

Plaintiff asserts that he endured racial discrimination while detained at DCDC in violation of 42 U.S.C. § 1981. *Compl.* [#1] at 3; *Response* [#26] at 19. 42 U.S.C. § 1981

prohibits racial discrimination in the making and enforcement of private contracts. To show a prima-facie case of discrimination under § 1981, a plaintiff must allege that: (1) he is a member of a protected class; (2) the defendants intended to discriminate on the basis of race; and (iii) the discrimination interfered with a protected activity as defined in § 1981. *See Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1101-02 (10th Cir. 2001). In the Tenth Circuit, "the action interfered with must be based on a contract." *Id.* at 1101. This must involve actual loss of a contractual interest and not merely the possible loss of future contractual opportunities. *Id.* at 1104. However, Plaintiff provides no allegations supporting the actual loss of any private contractual interest. In the absence of such, his claims under 42 U.S.C. § 1981 must be dismissed. *See, e.g.*, *Lymon v. Aramark Corp.*, 728 F. Supp. 2d 1222, 1263 (D.N.M. 2010).

Accordingly, the Court **recommends** that Plaintiff's claims asserted under 42 U.S.C. § 1981 be **dismissed with prejudice**. *See, e.g.*, *Marshall v. Exelis Sys. Corp.*, No. 13-cv-00545-CMA-KMT, 2014 WL 1213473, at *10 (D. Colo. Mar. 24, 2014).

## E.    42 U.S.C. § 1983

Pursuant to 42 U.S.C. § 1983, Plaintiff asserts violations of his Fourteenth Amendment due process and equal protection rights and Fourteenth Amendment and Eighth Amendment rights to have adequate medical care. *Compl.* [#1] at 14-17. With regard to his medical care, Plaintiff was a pretrial detainee protected by the Fourteenth Amendment for most of his time at DCDC, but on September 14, 2015, he entered a guilty plea and was thereafter a convicted prisoner protected by the Eighth Amendment for the remainder of his time at the facility. *See Estate of Booker v. Gomez*, 745 F.3d 405, 419

(10th Cir. 2014) (discussing appropriate application of the Fourth, Fourteenth, and Eighth Amendments throughout the criminal justice system process). Here, however, the distinction is generally immaterial, because the Tenth Circuit has stated that a pretrial detainee's Fourteenth Amendment deliberate indifference claim of inadequate medical care should be evaluated pursuant to the standards set by the United States Supreme Court in *Estelle v. Gamble*, 429 U.S. 97 (1976), which concerned a convicted prisoner's Eighth Amendment deliberate indifference claim. *See Blackmon v. Sutton*, 734 F.3d 1237, 1244 (10th Cir. 2013) (stating that pretrial detainees are owed "at least the same standard of care prison officials owe convicted inmates").

Defendants argue that all claims against them should be dismissed as violating the statute of limitations. *Motion* [#15] at 5-6; *Reply* [#31] at 2-5. A statute of limitations defense may be resolved on a motion to dismiss where application of the limitations period is apparent on the face of the complaint. *Dummar v. Lummis*, 543 F.3d 614, 619 (10th Cir. 2008).

Colorado's general two-year statute of limitations, Colo. Rev. Stat. § 13–80–102, applies to actions arising under 42 U.S.C. § 1983. *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006). Plaintiff filed this lawsuit on February 27, 2018, and thus, generally speaking, any claim based on conduct which occurred prior to February 27, 2016, is time-barred. *See Fogle*, 435 F.3d at 1258. However, Plaintiff invokes the prison mailbox rule, *see Response* [#26] at 10, which "provides some leeway for inmate filings." *Wright v. Long*, 743 F. App'x 239, 241 (10th Cir. 2018). "Under the rule, inmate filings can be timely if they are 'given to prison officials for mailing prior to the filing deadline' even if the court receives the filings after the deadline." *Id.* (quoting *Price v. Philpot*, 420 F.3d 1158, 1164 (10th Cir.

2005)).  Here, it is clear that Plaintiff gave his Complaint [#1] to prison officials for mailing on February 23, 2018.  *See* [#1-1] at 2.  Thus, in the absence of some exception, the Court finds that any claim based on conduct which occurred prior to February 23, 2016, is time-barred.

### 1.    Accrual of Plaintiff's Claims

Generally, "claims accrue and the statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action."  *Alexander v. Oklahoma*, 382 F.3d 1206, 1215 (10th Cir. 2004).  "A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence."  *Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994).

### a.    Medical Care

Plaintiff's second claim is based on alleged denial of adequate medical care while he was held at DCDC.  *Compl.* [#1] at 15.  The specific incidents involving denial of medical care to which Plaintiff points are as follows.

Plaintiff entered pretrial detention at DCDC around December 2014 or very early 2015.  *See Compl.* [#1] at 4 (stating that he was sentenced in late February 2016), 13 (stating that he was at DCDC for about thirteen months); *see also* [#316] in Civil Action No. 14-cr-00231-WJM (stating that he was ordered detained in his criminal case on December 12, 2014).[9]  Plaintiff states: "Initially, after arriving at [DCDC], Plaintiff would regularly attend

---

[9]  Plaintiff states in his Response that he arrived at DCDC "a little before, or sometime in, November 2015."  *See* [#26] at 2.  Based on the totality of the Complaint [#1], this appears to be a typographical error and should have been "2014" instead.  Regardless, the exact date of his arrival at the facility is immaterial to resolution of the present Motion [#15].

the Med-line expecting to receive his already prescribed mental-health medication: 'Trazadone.'" *Compl.* [#1] at 7. He further states that "[b]ecause the mental health medication was not automatically made available when Plaintiff arrived, he kited[ ] the Douglas County Mental Health Medical Dept., asking it to verify and then supply his immediate mental health serious medical needs and current prescription for Trazadone . . . ." *Id.* at 8. Plaintiff asserts that he "never received his prescription or any other mental health medication to treat his mental health diagnosis" while at DCDC. *Id.* Thus, although a precise date is impossible to fix based on the allegations of the Complaint, reading the Complaint in a light most favorable to Plaintiff, it is clear that Plaintiff's claim with respect to his mental health care accrued, at the latest, within the first few months of his incarceration, i.e., spring 2015.

Plaintiff's other claim regarding medical care is easily fixed with respect to an accrual date. Plaintiff mentions that in November 26, 2015, his hand was broken in an altercation with another inmate, and he did not receive appropriate medical attention for the better part of a day. *Compl.* [#1] at 6-7. Thus, his claim regarding his hand accrued on November 26, 2015.

These accrual dates mean that, in the absence of some exception, the incidents underlying Plaintiff's claim for denial of medical care are barred by the statute of limitations, given that all incidents occurred prior to February 2016. The Court addresses the exceptions which Plaintiff argues below after determining the accrual dates for his other claims.

### b. Racial Discrimination and Denial of Due Process

Plaintiff's claims with respect to racial discrimination and the denial of due process

are often closely related, and therefore the Court addresses both here for purposes of its statute of limitations analysis.

Plaintiff asserts that "from the moment [he] was transported by the Deputies['] escort of him from Intake, into [DCDC's] general population (GP) dormitory area," Deputy Sheriff Officers and inmates both "targeted Plaintiff speaking or yelling absurdities and vulgarities at him, such as 'nigga,' 'nigger' and other racially derogatory terms." *Compl.* [#1] at 14-15. The Deputies "laughed at the slurs yelled at Plaintiff and told him 'that's just how it is and always been here' so you will have to 'get use [sic] to it.'" *Id.* at 15. This particular incident, then, appears to have happened, and thus this portion of Plaintiff's claim accrued, when he first entered DCDC in late 2014 or very early 2015.

Plaintiff repeatedly points to all the times he was disciplined by incorporating a filing in his criminal case that was docketed on December 8, 2015.[10] *See, e.g., Compl.* [#1] at 13 (incorporating [#715] at 5 in Criminal Action No. 14-cr-00231-WJM). Plaintiff asserts that most, if not all, of his infractions were caused by his lack of medication, the racial taunting and other discriminatory actions by deputies and other inmates, or some combination of both. Regardless, although the dates relating to the infractions, disciplinary hearings, and subsequent discipline have not been provided, they obviously must have all occurred—and therefore Plaintiff's claims based on these incidents accrued—no later than December 8, 2015, when Plaintiff's criminal counsel filed the above-referenced document.

---

[10] Plaintiff repeatedly refers to twenty-three times when formal disciplinary action occurred. *See, e.g., Compl.* [#1] at 13. Plaintiff's reference to the documentation in his criminal case only contains twenty instances of discipline. *See* [#715] at 5 in Criminal Action No. 14-cr-00231-WJM. However, some of these instances of disciplinary action appear to be based on multiple infractions, which is likely how the discrepancy can be explained. Regardless, the precise number is immaterial to resolution of the present Motion [#15].

Similarly, Plaintiff's request to Defendant Penry for a copy of the video footage showing some of the infractions prior to his filing of a Motion for a Variant Sentence on December 3, 2015, is likewise time-barred in the absence of some exception. *See, e.g.*, *Compl.* [#1] at 11 (incorporating [#708] in Criminal Action No. 14-cr-00231-WJM).[11]

### 2. Exceptions to the Statute of Limitations

Plaintiff sets forth several arguments that an exception to the statute of limitations applies in the circumstances underlying his case.

### a. Continuing Violation Doctrine

First, Plaintiff invokes the continuing violation doctrine in support of his argument that his claims arising prior to February 23, 2016, are not time-barred. *Response* [#26] at 13-16. "The continuing violation doctrine was developed in the Title VII employment law context . . . ." *Vasquez v. Davis*, 882 F.3d 1270, 1277 (10th Cir. 2018). However, the Tenth Circuit Court of Appeals "has not yet decided whether it should apply to § 1983 claims." *Id.* Regardless, the continuing violation "doctrine is triggered by continuing unlawful acts but not by continuing damages from the initial violation." *Id.* (quoting *Colby v. Herrick*, 849 F.3d 1273, 1280 (10th Cir. 2017)). "Said another way, the continuing violation doctrine . . . would apply here only when a particular defendant allegedly committed wrongful acts within, as well as outside, the limitations period." *Vasquez*, 882 F.3d at 1277.

Here, Plaintiff does not allege any specific events which happened–or, reading the

---

[11] To the extent Plaintiff's alleged mistreatment at DCDC may have continued after December 8, 2015, the Court notes that the Complaint's "naked assertion[s] devoid of further factual enhancement" are insufficient on which to base any claims. *See Iqbal*, 556 U.S. at 678.

Complaint in a light most favorable to him, may have happened–within the statute of limitations. Thus, there is no indication that any particular defendant committed any specific wrongful act within the limitations period. For example, although Plaintiff alleges he did not receive any medication in February 2016—i.e., "continuing damages"—this does not mean that the continuing violation doctrine could potentially apply, because he has not also alleged that any Defendant took any wrongful action within the limitations period, such as again refusing him medication upon his request—i.e., "continuing unlawful acts." In other words, Plaintiff has merely alleged that Defendants refused him his medication in the immediate weeks after his incarceration began at DCDC, and not that he asked for, and was refused, his medication within the limitations period. Thus, Plaintiff has alleged no specific action taken by any Defendant in late February 2016 (or anytime after December 8, 2015) which could "anchor" a claim under the continuing violation doctrine.[12] Thus, the Court finds that the continuing violation doctrine is inapplicable here.

### b. Mental Health Issues

Second, Plaintiff argues that his mental health condition and Defendants' failure to treat it warrants equitable tolling of his claims.[13] *Response* [#26] at 16-17.

"Equitable tolling of the limitations period is available when an inmate diligently

---

[12] For example, he does not provide allegations of any disciplinary proceedings occurring then or that he asked for his medication again then. To be clear, though, the Court is not holding that these kinds of allegations would be sufficient on their own to "anchor" Plaintiff's claims under the continuing violation doctrine. Rather, the Court is only stating that, at a bare minimum, such allegations would be necessary.

[13] This section of the Court's analysis encompasses Plaintiff's arguments underlying both his "Position Number One—denial of mental health care and treatment," *see Response* [#26] at 11-12, and his "Position Number Four—Alternatively, Plaintiff's mental health condition and failure to treat it warrants equitable tolling on his claims," *see id.* at 16-17.

pursues his claims and demonstrates that the failure to timely file was caused by extraordinary circumstances beyond his control." *Coppage v. McKune*, 534 F.3d 1279, 1281 (10th Cir. 2008). Equitable tolling is appropriate . . . when an adversary's conduct—or other uncontrollable circumstances—prevents a prisoner from timely filing, or when a prisoner actively pursues judicial remedies but files a defective pleading during the statutory period." *Gibson v. Klinger*, 232 F.3d 799, 808 (10th Cir. 2000) (internal quotation marks and citations omitted). An incarcerated litigant has a "strong burden to show specific facts to support [a] claim of extraordinary circumstances and due diligence." *Yang v. Archuleta*, 525 F.3d 925, 928 (10th Cir. 2008).

Plaintiff concedes that when he was transferred from DCDC and incarcerated with the Colorado Department of Corrections following his sentencing, he was treated with his mental health medication Trazadone. *Compl.* [#1] at 9; *see also Response* [#26] at 16 (clarifying that his Trazadone treatment was reinstated "immediately" after leaving DCDC). Thus, by Plaintiff's own admission, he was under appropriate mental health treatment from at least early March 2016 onward. Even if, arguendo, the Court were to assume that Plaintiff was unable to protect his legal rights while at DCDC due to mental health issues, there is no indication that he diligently pursued those rights in the nearly two years he was on his medication prior to the filing of the Complaint [#1] in late February 2018. In other words, there are no allegations that extraordinary, uncontrollable circumstances surrounding Plaintiff's mental health have been present for the nearly two years since Plaintiff left DCDC such that the statute of limitations should be tolled. *See Coppage*, 534 F.3d 1279 at 1281.

### c.   Sentencing Hearing

Third, Plaintiff argues that his "claims became 'reasonably ascertainable' at his sentencing," which occurred on February 24, 2016. *Compl.* [#1] at 4; *Response* [#26] at 12-13. The sentencing judge in Plaintiff's criminal case (Criminal Action No. 14-cr-00231-WJM) "departed from the minimum range, in part, due to the mitigating factors from Plaintiff's pre-trial and pre-sentence conditions of confinement." *Compl.* [#1] at 4. Thus, Plaintiff was sentenced " to only 40 months in the [Bureau of Prisons] although the original agreement signed between Plaintiff and the Government was a deal for the minimum to be set at 60 months." *Id.* Plaintiff states that "[t]he Court noted it departed downward to 40 months from the minimum 60 months, in part, because of the discrimination and refusal of [m]edications Plaintiff suffered in the custody of" DCDC. *Id.* (incorporating [#825] at 3 in Criminal Action No. 14-cr-00231-WJM (stating in part that "[t]he Court varied downward due to the harshness of the time spent in pretrial confinement")).

"A civil rights action accrues when the plaintiff knows or has reason to know *of the injury* which is the basis of the action." *Price v. Philpot*, 420 F.3d 1158, 1162 (10th Cir. 2005) (emphasis added). "[I]t is not necessary that a claimant know all of the evidence ultimately relied on for the cause of action to accrue." *Id.* In other words, there is a material difference "between a plaintiff's awareness of 'the fact of his injury or its cause' and 'a plaintiff's ignorance of his legal rights.'" *United States v. Kubrick*, 444 U.S. 111, 1122 (1979). "[I]n determining when a cause of action has accrued, where the plaintiff is aware of both the fact that he has been injured and its cause, federal courts should not postpone accrual of the cause of action until the plaintiff has realized the legal basis of his claim." *Coleman v. Morall*, 64 F. App'x 116, 119 (10th Cir. 2003). "[B]ecause the relevant injury in a civil rights action is the violation of a constitutional right, it would be analytically

-21-

incorrect to link accrual of a cause of action under § 1983 to a plaintiff's knowledge concerning the extent of the harm the constitutional violation might have caused." *Id.*

All of Plaintiff's claims are based on types of injuries that he would have immediately known, such as, for example, when he was allegedly denied medical care for the better part of a day when his hand was injured; when he allegedly failed to receive due process at his disciplinary hearings; and when he was allegedly racially taunted by deputies. Although the sentencing judge may have highlighted some or all of these issues during Plaintiff's sentencing hearing, and thus Plaintiff may have become aware at that time that he may have a cause of action, Plaintiff's causes of action accrued when the injuries occurred, not when he may have first realized his civil rights may have been violated. Thus, to the extent Plaintiff asserts that his claims became "reasonably ascertainable" at his February 24, 2016 sentencing hearing, his argument is without merit.

Accordingly, because no exception to the statute of limitations applies under the circumstances of this case, the Court **recommends** that Plaintiff's constitutional claims asserted under 41 U.S.C. § 1983 (Fourteenth Amendment and Eighth Amendment) be **dismissed with prejudice**. *See Gee v. Pacheco*, 627 F.3d 1178, 1195 (10th Cir. 2010) (stating that claims barred by the statute of limitations may be dismissed with prejudice because permitting amendment of those claims would be futile).

**F.      42 U.S.C. § 1985**

Plaintiff alleges that Defendant Penry failed to preserve and to produce video footage showing incidents occurring in DCDC which caused Plaintiff to be disciplined. *Compl.* [#1] at 11-12. Plaintiff states: "Any attempt to shield review of the relevant videoed

matters from review, by either intentionally or willfully destroying or obstructing access to it, constitutes a violation of due process, and or >42 U.S.C. § 1985 [sic] (Conspiracy to interfere with civil rights); >§ 1985(1) [sic] (Preventing officer from performing duties); or § 1985(2) (Obstructing justice)." *Id.* at 12.  In short, the allegations appear to pertain to Defendant Penry's alleged failure to provide detention center footage during the sentencing phase of Plaintiff's criminal case, i.e., Criminal Action 14-cr-00231-WJM.  *See id.* at 11-12.

The same two-year statute of limitations that applies to claims asserted under 42 U.S.C. § 1983 also applies to claims asserted under 42 U.S.C. § 1985.  *Vaughn v. Krehbiel*, 367 F. Supp. 2d 1305, 1310 (D. Colo. 2005).  Accordingly, for the same reasons discussed in the Court's analysis regarding Plaintiff's claims under 42 U.S.C. § 1983, Plaintiff's claims under 42 U.S.C. § 1985 are also barred by the statute of limitations.

Accordingly, the Court **recommends** that Plaintiff's claims under 42 U.S.C. § 1985 be **dismissed with prejudice**.  *See Gee*, 627 F.3d at 1195.

### IV.  Conclusion

For the foregoing reasons,

IT IS HEREBY **RECOMMENDED** that the Motion [#15] be **GRANTED** and that all claims be **DISMISSED** as outlined above.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*,

474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: January 22, 2019

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge