IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 18-cv-00492-RBJ-KLM

JAMES TILLMON,

      Plaintiff,

v.

COUNTY OF DOUGLAS, in its official capacity,
TONY G. SPURLOCK, Douglas County Sheriff in his official and individual capacities,
J. YOUNG, Sergeant in Douglas County, in her official and individual capacities,
PENRY KEITH, of the Douglas County Sheriff's Office in his official and individual capacities,
and JOHN AND/OR JANE DOE(S) of the Douglas County Deputy Sheriff Medical Dept, in his,
her, or their individual and official capacities,

      Defendants.

---

## ORDER

---

      Plaintiff, representing himself pro se, alleges that while he was held in pretrial and

presentence confinement in the Douglas County jail, defendants denied him adequate medical

care, subjected him to racial discrimination, and imposed excessive institutional violations

without due process.  Defendants move to dismiss all claims on the grounds that some of them

are not properly named parties; the statute of limitations has expired; the complaint fails to state

a cognizable claim; and the individual defendants are entitled to qualified immunity.  ECF No.

15.  The Court referred the motion to United States Magistrate Judge Kristin L. Mix for a report

and recommendation.  Judge Mix recommends that the motion be granted.  *See* ECF No. 42.  For

the reasons discussed below, the Recommendation is AFFIRMED and ADOPTED IN PART,

and the motion to dismiss is GRANTED in PART and DENIED in part. The Court also denies plaintiff's motion for the appointment of counsel. ECF No. 43.

## I.    FACTUAL BACKGROUND

Judge Mix discusses the factual background of plaintiff's claims in depth in her Recommendation, ECF No. 42 at 1-6. Taking plaintiff's well-pled allegations in the complaint as true, I will summarize the pertinent background briefly. Plaintiff was in the custody of the Douglas County Detention Center (DCDC) at all times relevant to this lawsuit. ECF No. 1 at ¶13. He was placed in housing units that consisted of 22 or 23 prisoners and was the only African American inmate in these units. *Id.* at ¶35. He was often antagonized by white inmates because of his race and was physically attacked or provoked to fight in self-defense on at least 23 occasions. *Id.* at ¶14. Plaintiff complained about these racial attacks but detention center officials refused to intervene at times or were slow to intervene at other times, purportedly exhibiting the same sentiments as Mr. Tillmon's attackers. *Id.* at ¶¶15-17. Mr. Tillmon alleges that these officials were acting in conformity with racially discriminatory practices and customs maintained by the Douglas County Sheriff Tony Spurlock within the Douglas County Sheriff Department. *Id.* at ¶53.

From one of these attacks, Mr. Tillmon was seriously injured. On November 26, 2015 Mr. Tillmon broke his hand defending himself from an attack by a white inmate. An unidentified DCDC official left him in a segregation cell for 8 hours instead of obliging Mr. Tillmon's repeated requests to be taken to the infirmary. *Id.* at ¶20. Eventually a nurse saw him during a routine "med-line run" and had him transported to the Castle Rock Adventists Hospital for treatment. *Id.* at ¶¶20, 23.

Plaintiff also alleges that Douglas County failed to implement adequate protocol to ensure appropriate continuity of Plaintiff's mental health care while he was at DCDC. *Id.* at ¶24. While incarcerated at other facilities, Mr. Tillmon was receiving his prescribed mental health medication: "Trazadone." *Id.* at ¶27. "Plaintiff believed the Trazadone prescription would have automatically followed him[,] . . . [and] he kited the Douglas County Mental Health Medical Dept., asking it to verify and then supply his immediate mental health serious medical needs and current prescription for Trazadone." *Id.* ¶¶27-28. However, despite his requests, Plaintiff was not provided Trazadone nor treated by any provider at DCDC for his mental health needs. *Id.* at ¶¶29-31.

Mr. Tillmon also describes 20 disciplinary actions he incurred while at DCDC. He states that these write-ups, which resulted in "lockdowns" for him, were "racially targeted" and "petty." *Id.* at ¶43. As examples, Mr. Tillmon was disciplined for giving another inmate sugar and for not doing a linen exchange the morning after he spent the night in his cell assisting his cellmate in obtaining medical care as he was having seizures. *Id.* at ¶¶41-43. He also describes how after a fight with a white inmate, he received 60 days in solitary confinement but the white inmate only received 3 days for the same fight. *Id.* at ¶45. Mr. Tillmon states that he was not given any written notice of charges before the scheduled hearings for these infractions nor ever received an answer to any of his appeals for the charges. *Id.* at ¶39. Defendant Sergeant Deputy Young was the hearing and sanctioning officer in these disciplinary hearings, and plaintiff states that in each case, she was aware that the disciplinary actions were the result of racial discrimination and still found him guilty of every infraction. *Id.* at ¶35.

Mr. Tillmon also asserts that Defendant Keith Penry refused to produce a videotape despite requests from Mr. Tillmon's criminal defense counsel to produce this video. Plaintiff believes the videotape would have shown a white inmate insulting Mr. Tillmon with racial epithets, Mr. Tillmon and the inmate walking into a cell and fighting and then walking out of a cell. Mr. Tillmon states that for this incident he received a harsher sanction than the white inmate. *Id.* at ¶¶47-50. He argues that this attempt to shield review of the videotape constitutes a violation of due process and/or a violation of 42 U.S.C. § 1985 as a conspiracy to interfere with civil rights, preventing an officer from performing duties, or obstructing justice. *Id.* at ¶52.

On February 24, 2016, Judge William J. Martinez sentenced Plaintiff in the criminal case for which he had been held in pretrial detention at DCDC. *See* ECF No. 812 in Criminal Action No. 14-cr-00231-WJM. Prior to this sentencing, Mr. Tillmon's attorney moved for a downward departure from the guidelines based on the harshness of his pretrial and presentence confinement at DCDC. This motion described how Mr. Tillmon was the target of racial discrimination and taunting from both inmates and staff, how guards ignored or were slow to intervene when he was attacked by other inmates and how when he defended himself, he had been the individual written up with institutional violations while other, non-African American individuals were not disciplined or disciplined less harshly. ECF No. 1 at ¶68; ECF No. 708 in Criminal Action No. 14-cr-00231-WJM at 7. Judge Martinez granted Plaintiff's motion for a downward variance from the federal minimum sentence, in part "due to the harshness of the time spent in pretrial confinement . . . ." ECF No. 1 at ¶63 (quoting ECF No. 825 at 3 in Criminal Action No. 14-cr-00231-WJM).

## II.    STANDARD OF REVIEW

The Recommendation advised the parties that specific written objections were due within fourteen (14) days after being served with a copy of the Recommendation and that failure to make timely objections may bar de novo review by the district judge of the magistrate judge's proposed findings and recommendations.  ECF No. 42 at 23-24.  Despite this advisement, plaintiff did not file any objections.[1]

"In the absence of timely objection, the district court may review a magistrate . . . [judge's] report under any standard it deems appropriate."  *Summers v. Utah,* 927 F.2d 1165, 1167 (10th Cir.1991) (citing *Thomas v. Arn*, 474 U.S. 140, 150 (1985)).  In exercising my discretion, partly due to the fact that the recommendation was twice returned as undeliverable, *see* n.1 supra, I have conducted a de novo review of the motion and recommendation.  In doing so, I came to the same conclusions as Judge Mix on the issues of the purported class action relief, ECF No. 42 at 8-9, the mootness of injunctive relief, *id.* at 10-11, and plaintiff's failure to state a claim under 42 U.S.C. § 1981, *id.* at 12-13.  I adopt Judge Mix's findings entirely as to these issues.  However, I come to a different conclusion regarding the effect of the statute of limitations on plaintiff's claims under 42 U.S.C. § 1983 and 42 U.S.C. § 1985.  Because I find

---

[1] The court sent the magistrate judge's recommendation to Mr. Tillmon, correctly addressed to the Beaumont, Texas facility where he has indicated he is now an inmate, but the mailing was returned as undeliverable.  The court sent the recommendation again to the correct address as he had provided it.  *See* ECF No. 46.  However, once again the mailing was returned as undeliverable.  Meanwhile, the court received a pleading from Mr. Tillmon ("Plaintiff Motion for Enlargement Time," ECF No. 47) which again lists his address at the Beaumont facility, albeit with a somewhat different zip code than he provided previously.  This order is to be mailed to Mr. Tillmon #40850-013 at both P.O. Box 26030, USP FCC Complex, Beaumont, TX 77720 and at 6200 Knauth Rd, Beaumont USP, Beaumont, TX 77705 –the two addresses he has provided to the court.

that these claims are not barred by the statute of limitations, I also consider defendants' other arguments under Rule 12(b)(6) in this order.

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)).

> [I]f the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements.

*Id.* This rule applies to all proceedings involving a pro se litigant. *Id.* at 1110 n.3. At the same time, the Court cannot "assume the role of advocate for the pro se litigant." *Id.* at 1110. Pro se litigants must follow the same procedural rules that govern other litigants. *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

### III.    ANALYSIS

#### A) <u>County of Douglas as an Improperly Named Defendant.</u>

I agree with Judge Mix's conclusion that the County of Douglas is an improperly named party in this case. According to Colo. Rev. Stat. § 30-11-105 the "Board of County Commissioners of Douglas County" must be named as the defending party rather than "County of Douglas" to establish jurisdiction. However, I believe that judicial economy would be better served by granting plaintiff leave to amend his complaint rather than dismissing this party outright. *See, e.g., Wilkenson v. Colorado*, 2013 WL 6978510 at *5 (D. Colo. Dec. 17, 2013) (explaining that the Court did not have jurisdiction over the county because the plaintiff did not properly name the Board and County Commissioners of the County of Mesa, but explaining that "a simple amendment" to the complaint "would easily cure this technical defect"). Though the

court in *Wilkenson* dismissed the county, it did so because the statute of limitations independently barred suit against the county. In doing so, the court also referred to Colorado state law cases where the court gave the plaintiff an opportunity to amend the complaint instead of dismissing the county defendant. I grant Mr. Tillmon leave to amend his complaint to cure this technical defect, and I will analyze the county's other defenses in this order by using "Douglas County" as a shorthand to refer to it.

**B) <u>Statute of Limitations.</u>**

In their motion to dismiss, defendants argue that plaintiff's claims are time barred. A statute of limitations defense may be resolved on a motion to dismiss where application of the limitations period is apparent on the face of the complaint. *Dummar v. Lummis*, 543 F.3d 614, 619 (10th Cir. 2008). "Limitations periods in § 1983 suits are to be determined by reference to the appropriate state statute of limitations and the coordinated tolling rules . . . ." *Hardin v. Straub*, 490 U.S. 536, 539 (1989). The Tenth Circuit has held that the statute of limitations that should be applied to § 1983 actions in Colorado is that for Colorado personal injury suits - two years from the time that the cause of action accrued. *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006) (citing *Blake v. Dickason*, 997 F.2d 749, 750-51 (10th Cir. 1993)). Federal law, however, governs the issue of when a cause of action accrues. "A § 1983 action accrues when facts that would support a cause of action are or should be apparent." *Id.* (citing *Fratus v. DeLand*, 49 F.3d 673, 674-75 (10th Cir. 1995) (quotation marks omitted)).

I agree with Judge Mix's determinations of the accrual dates for Mr. Tillmon's claims concerning his request for video footage, of denial of medical care, racial discrimination and denial of due process. ECF No. 42 at 15-18. To summarize briefly, Mr. Tillmon entered pretrial

detention at DCDC around December 2014 or early 2015. For his denial of mental health treatment claim, he states that after arriving at DCDC he would regularly attend the Med-line expecting to receive his already prescribed mental health medication. ECF No. 1 at ¶26. While a precise date is impossible to fix based on the allegations of the complaint, based on his description of his efforts seeking medical care, his claim with respect to his mental health care must have accrued within the first few months of his incarceration, sometime in spring 2015. His claim for inadequate medical care for his broken hand accrued on November 26, 2015, the date on which plaintiff states that the injury occurred and he was left untreated for several hours. *Id.* at ¶19.

In describing his due process claims, plaintiff refers in his complaint to a filing that was docketed on December 8, 2015 that discusses all the disciplinary actions taken against him at DCDC. ECF No. 1 at ¶58 (incorporating ECF No. 715 at 5 in Criminal Action No. 14-cr-00231-WJM). Though plaintiff does not describe the dates relating to the infractions, disciplinary hearings, and subsequent discipline, they must have all occurred no later than December 8, 2015 given the fact they were described in this filing. Similarly, plaintiff's complaint that Defendant Penry refused his request to produce the video footage prior to his filing of a Motion for a Variant Sentence on December 3, 2015, must have accrued no later than December 3, 2015. The motion for a variant sentence also describes the racial harassment and discrimination that Mr. Tillmon alleges. ECF No. 1 at ¶68 (describing ECF No. 708 in Criminal Action No. 14-cr-00231-WJM at 7). Therefore, this claim must have also accrued at the latest by December 3, 2015.

Mr. Tillmon filed his complaint in the present action on February 27, 2018. Mr. Tillmon invokes the prison mailbox rule, which can make an inmate filing timely if the inmate gives it to prison officials for mailing prior to the filing deadline even if the court receives the filings after the deadline. *Wright v. Long*, 743 F. App'x 239, 241 (10th Cir. 2018) (unpublished). Mr. Tillmon gave his complaint to prison officials for mailing on February 23, 2018. ECF No.1-1 at 2. Thus, unless an exception applies, all of Mr. Tillmon's claims are time barred because they accrued prior to February 23, 2016.

**C) Statutory Tolling for Disability in Colorado.**

Plaintiff alleges in his complaint that while incarcerated at DCDC, he had "immediate mental health serious medical needs," ECF No. 1 at ¶28, a "mental health diagnosis," *id.* at ¶31, and "suffer[ed] from anxiety and panic attacks three to four times a week," *id.* at ¶32 (citing ECF No. 708 at 5 in 14-cr-00231-WJM). He asserts in his response to the motion to dismiss that his mental condition made him unable to pursue his legal claims while incarcerated at DCDC. ECF No. 26 at 16-17. He argues that because his mental health treatment of Trazadone was not reinstated until after he left DCDC for another detention center, the statute of limitations should be tolled until he was receiving appropriate mental health treatment once again. *Id.*

State tolling rules govern the tolling of the statute of limitations in § 1983 cases. *Hardin*, 490 U.S. at 539; *see also Fogle*, 435 F.3d at 1258 (applying Colorado state law to tolling of § 1983 claim). Under Colorado law, plaintiffs bear the burden of demonstrating that the statute of limitations should be tolled." *Braxton v. Zavaras*, 614 F.3d 1156, 1159 (10th Cir. 2010). Colo. Rev. Stat. § 13-81-103 governs the tolling of statutes of limitations in the state of Colorado

where the owner of the right of action is a person under disability at the time the action accrues.
It states:

> If such person under disability is represented by a legal representative at the time the right accrues and prior to the termination of such disability . . . [s]uch legal representative, or his successor in trust, in any event shall be allowed not less than two years after his appointment within which to take action on behalf of such person under disability, even though the two-year period expires after the expiration of the period fixed by the applicable statute of limitations.

Colo. Rev. Stat. § 13-81-103(1)(a).  However, I find that this paragraph does not apply to Mr. Tillmon.  Though Mr. Tillmon had Sixth Amendment-appointed counsel to represent him in his criminal matter, this counsel was not appointed to represent him in pursuing civil redress.  *See* ECF No. 307 in Criminal Action No. 14-cr-00231-WJM (Criminal Justice Act Appointment document describing "Representation Type" as "Criminal Case" and limiting representation to the "case/matter of US v. Garrison").  For the purposes of Mr. Tillmon's civil rights claims in the present action, Mr. Tillmon was not represented by a legal representative at the time his claims accrued.

However, the statute continues with a paragraph that is applicable to tolling here:

> If the disability of any person is terminated before the expiration of the period of limitation in paragraph (a) of this subsection (1) and no legal representative has been appointed for him, such person shall be allowed to take action within the period fixed by the applicable statute of limitations or within two years after the removal of the disability, whichever period expires later.

Colo. Rev. Stat. § 13-81-103(1)(c).  The Colorado Supreme Court has explained that Colo. Rev. Stat. § 13-81-103(1)(a) "is intended to toll the applicable statute of limitations during the period of disability. . . . The provisions of section 13-81-103, therefore, operate to suspend the running of the applicable statute of limitations until either the disability is removed or, as expressly provided in subsection (1)(a), a 'legal

representative' is appointed for 'the person under disability.'" *Southard By & Through Southard v. Miles*, 714 P.2d 891, 897 (Colo. 1986). Colo. Rev. Stat. § 13-81-103(1) "establishes mental incompetency as an independent basis to toll the periods of limitation and repose." *Tenney v. Flaxer*, 727 P.2d 1079, 1085 (Colo. 1986).

Mr. Tillmon was sentenced in the criminal case for which he had been held at DCDC on February 24, 2016, *see* ECF No. 812 in Criminal Action No. 14-cr-00231-WJM. He clarifies in his response that he left DCDC on February 29, 2016, and he asserts that his mental health treatment was reinstated and that he began to receive his Trazadone prescription immediately after arriving at his next detention facility after DCDC. ECF No. 26 at 2, 16. However, these facts are not alleged in his complaint. Nevertheless, taking Mr. Tillmon's allegations that he never received any mental health treatment while incarcerated at DCDC as true along with his sentencing date, apparent from the face of a document referenced in his complaint, leads to the inference that Mr. Tillmon was reinstated on mental health treatment by March 2016 at the earliest.

Assuming for present purposes that Mr. Tillmon was mentally incompetent without appropriate treatment, I still do not know when the administration of this mental health treatment would have resulted in mental competence. For example, I do not have any medical opinions before me opining on how long the administration of Trazadone or other treatment would take to result in mental competence for Mr. Tillmon. However, determining an exact date of termination of Mr. Tillmon's disability is unnecessary to determine whether or not Mr. Tillmon's claims are barred by the statute of limitations. This is because even if Mr. Tillmon was instantly competent upon reinstatement of

mental health treatment in March 2016, Colo. Rev. Stat. § 13-81-103(1)(c) would give

Mr. Tillmon until March 2018 to file his claims.  Mr. Tillmon filed his present action on

February 27, 2018, or applying the prison mailbox rule, on February 23, 2018, which is

within this period.

I find that Mr. Tillmon has pled sufficient facts to plausibly allege that he had a

mental disability when his claims accrued, and that Colorado law suspends the running of

the statute of limitations against him until the termination of his disability.  In coming to

this conclusion, I am guided by *Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995).  In

*Fratus*, a district court disregarded a plaintiff's allegations that he was mentally ill, which

would have permitted tolling of the statute of limitations.  It held that the plaintiff's

statements alone were insufficient to prove that his mental illness was of such a nature to

make him mentally incompetent.  The Tenth Circuit reversed the district court's dismissal

of the case stating:

> The district court erred in so doing because Mr. Fratus need not *prove* the validity
> of the factual allegations in his initial pleadings.  While it is certainly possible that
> the statute of limitations should be tolled only through February 20, 1990, this
> fact is not patently clear from the face of Mr. Fratus' pro se pleadings, pleadings
> which we must construe liberally.

*Id.*

Similarly here, Mr. Tillmon plausibly alleges that he had a mental disability when

his claims accrued, and he asserts that he continued to be under this disability until he

was transferred to a different facility and administered appropriate mental health

treatment in March 2016.  *Fratus* holds that this is a sufficient basis upon which to toll

the statute of limitations at the motion to dismiss stage. Therefore, I find that Mr. Tillmon did timely file his claims.

The Recommendation found against Mr. Tillmon on his argument for tolling because of mental incompetence. ECF No. 42 at 19-20. In doing so, it cited cases from the Tenth Circuit holding that an inmate must diligently pursue his claims in order to qualify for equitable tolling. *Id.* (citing *Coppage v. McKune*, 534 F.3d 1279, 1281 (10th Cir. 2008); *Yang v. Archuleta*, 525 F.3d 925, 928 (10th Cir. 2008); *Gibson v. Klinger*, 232 F.3d 799, 808 (10th Cir. 2000)). The Recommendation found that there was no indication that Mr. Tillmon diligently pursued his rights in the nearly two years after he was transferred out of DCDC and was receiving mental health treatment prior to the filing of his complaint in late February 2018. ECF No. 42 at 20.

However, these cases all concern prisoners seeking postconviction relief through the filing of a writ of habeas corpus and the application of the Antiterrorism and Effective Death Penalty Act (AEDPA) to the prisoners' claims. In each of these cases, the Tenth Circuit was applying federal law concerning the statute of limitations for habeas claims. The portion of AEDPA applied in each case requires a habeas application from a prisoner in state custody to be filed within one year of the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review. 28 U.S.C. § 2244(d)(1)(A).

The Tenth Circuit has held that "AEDPA's one-year statute of limitations is subject to equitable tolling but only in rare and exceptional circumstances." *Gibson*, 232 F.3d at 808 (internal quotation marks omitted). The Tenth Circuit held in *Miller v. Marr*

that a prisoner seeking equitable tolling of the one-year limitation period in AEDPA must describe specific steps he or she took to diligently pursue the federal claim. 141 F.3d 976, 977 (10th Cir. 1998). In coming to this conclusion, the Tenth Circuit reasoned that the Supreme Court has "expressed a clear deference to the rules that Congress has fashioned concerning habeas" though there may be circumstances where the limitation period renders the habeas remedy inadequate and ineffective. *Id.* at 978. The Tenth Circuit concluded that the one-year time period begins to run in accordance with individual circumstances that could affect the availability of habeas, though an inmate must demonstrate that he or she is diligently pursuing his or her claims to warrant equitable tolling. *Id. Gibson* and *Yang* apply this principle from *Miller* in finding that there is no equitable tolling of the limitation period in AEDPA where the prisoner cannot demonstrate that he has diligently pursued his claims. *Gibson*, 232 F.3d at 808; *Yang,* 525 F.3d at 930. *Coppage* applies federal law concerning equitable tolling of AEDPA's one-year limit to determine that the petitioner's circumstances are not "rare and exceptional" to justify equitable tolling. *Coppage*, 534 F.3d at 1281.

However, Mr. Tillmon is not a prisoner filing a writ of habeas corpus for postconviction relief. Thus, the limitation period under AEDPA and related federal law on equitable tolling of this period are inapplicable to his claims. The Supreme Court has held that the statute of limitations in § 1983 suits and applicable tolling provisions are governed by state law. *Hardin*, 490 U.S. at 539. Colorado confers a statutory right of tolling upon Mr. Tillmon in Colo. Rev. Stat. § 13-81-103(1)(a) that is unaffected by federal case law interpreting when equitable tolling is appropriate under AEDPA.

Therefore, I find that Mr. Tillmon need not demonstrate steps he took to diligently pursue his claims to justify the application of statutory tolling under Colorado law.

I note here that defendants also argue that under Colorado law, "equitable tolling of a statute of limitations is limited to situations in which either the defendant has wrongfully impeded the plaintiff's ability to bring the claim or truly extraordinary circumstances prevented plaintiff from filing his or her claim despite diligent efforts." *Romer*o, 461 F. App'x at 666 (quoting *Brodeur v. Am. Home Assurance Co.*, 169 P. 3d 139, 149 (Colo. 2007) (en banc)). Even assuming that neither of these circumstances are present here, this law is also not on point to this case. Where there is a right of statutory tolling, a court need not explore whether equitable tolling would be appropriate. *See, e.g. Braxton v. Zavaras*, 614 F.3d 1156, 1159 (10th Cir. 2010) (This case is cited in *Romero* and considers whether plaintiff is entitled to equitable tolling after finding that there is no dispute that Colorado does not have any statutory tolling provisions which would control the case).

Because I find that Mr. Tillmon has timely filed his claims, I now turn to defendants' arguments that he has failed to adequately plead his Eighth and Fourteenth Amendment claims under Rule 12(b)(6).

### D) <u>Pleading Requirements Under Rule 12(b)(6).</u>

Defendants argue that plaintiff has failed to state a plausible claim under Fed. R. Civ. P. 12(b)(6) for his claims under the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment and under the Eighth Amendment for deliberate indifference to his medical needs. Defendants argue in a broad stroke that Mr. Tillmon does not meet

his burden under *Twombly* or *Iqbal*, and that his complaint lacks specific facts and details required to bring each of his claims. ECF No. 15 at 8. I disagree with respect to Mr. Tillmon's equal protection and Eighth Amendment claims and will describe the factual allegations that suffice to state each claim below. However, I agree that Mr. Tillmon's due process claim should be dismissed. I also note that personal participation is an essential allegation in a § 1983 claim against individual defendants. *Bennett v. Passic*, 545 F.2d 1260, 1262 (10th Cir. 1976). However, because defendants do not raise this issue in their motion, I will not address it *sua sponte* at this juncture.

1) <u>Denial of Medical Care.</u>

Mr. Tillmon alleges that prison officials violated the Eighth Amendment's ban on cruel and unusual punishment in two ways: by failing to treat his mental health needs during the entire period of his incarceration at DCDC and by not treating his broken hand for a period of eight hours.

a) <u>Mental Health Treatment</u>.

Mr. Tillmon alleges that Douglas County operated a custom, policy or practice within its County Detention Center that was inadequate and insufficient to maintain Plaintiff's continuity of mental health care." ECF No. 1 at ¶24. Mr. Tillmon states that he suffers from anxiety and panic attacks three to four times a week. *Id.* at ¶32. Mr. Tillmon was prescribed Trazadone at CDOC, and this prescription followed him when he was moved to an immigration detention facility, where he continued to be treated with Trazadone for his mental health needs. *Id.* at ¶27. Mr. Tillmon states that he was not given Trazadone after arriving at DCDC. *Id.* at ¶25. He communicated to staff through

the "kite" system asking for his prescription for Trazadone to be verified with CDOC or GEO and the drug supplied to him. *Id.* at ¶28.

Mr. Tillmon states that despite requesting access to a mental health counselor on three or four occasions, the Medical Doe Defendant(s) within the mental health medical department ignored his requests. No one provided him with his prescription or permitted him to see a medical profession that could make an independent diagnosis and treatment plan. *Id.* at ¶¶ 29-30, 33. Mr. Tillmon states that he never received his prescription or any other mental health medication while at DCDC. *Id.* He brings this claim both against Douglas County and against Medical Doe Defendant(s).

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted). The Tenth Circuit recognizes three types of potential deliberate indifference to a prisoner's medical needs: (1) a medical professional failing to treat a serious medical condition; (2) a prison official preventing an inmate from receiving medical treatment; or (3) a prison official denying a prisoner access to medical personnel capable of evaluating the inmate's condition. *See Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000).

The Eighth Amendment protection extends to physical as well as psychological medical needs. *See Ramos v. Lamm*, 639 F.2d 559, 574 (10th Cir. 1980). To properly assert a claim alleging inadequate psychological treatment two prongs must be met: the prisoner's mental health needs must be objectively serious, and the prison official must subjectively know of and disregard an excessive risk to the inmate's health or safety. *See*

*Howard v. Waide*, 534 F.3d 1227, 1236 (10th Cir.2008) (citing *Farmer v. Brennan*, 511 U.S. 825 (1994)).

"[A] medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Hunt v. Uphoff,* 199 F.3d 1220, 1224 (10th Cir.1999) (quoting *Ramos,* 639 F.2d at 575). Mr. Tillmon alleges that his mental health needs are serious. ECF No. 1 at ¶30. He states that physicians at prior detention facilities have diagnosed his mental health needs as requiring treatment and prescribed him Trazadone as treatment. He also alleges that his mental health issues have caused a significant disruption in his everyday life. He states that while incarcerated at the CDOC and GEO and treated with Trazadone, he did not have any disciplinary actions taken against him. "However, while in the Douglas County Detention Center where he was denied his medication (and racially targeted and discriminated against) Plaintiff received a number of write-ups, about 23 in total." *Id.* at ¶34. I conclude that Mr. Tillmon's pleadings meet the first prong of the test: his mental health needs are objectively serious.

The second prong, that the defendant knew of and disregarded a risk to the inmate's health and safety, is a closer call. Mr. Tillmon does not know the identities of the prison officials who ignored or denied his requests for mental health treatment. Mr. Tillmon does not specify whether it was the same prison official or different prison officials who received each of his requests. This would affect the level of knowledge the prison official had about Mr. Tillmon's mental health needs. However, Mr. Tillmon does

allege that he made repeated requests, and at least one request that was documented

through the "kite" system to DCDC medical personnel for treatment. He states that his

requests were ignored for his entire time as an inmate at DCDC, causing him harm. If

Mr. Tillmon can show that a Medical Doe Defendant received this documented request or

repeated verbal requests and chose not to respond, he has a viable claim that this medical

provider either refused to treat a serious medical condition or did not play the gatekeeper

role of referring Mr. Tillmon to a medical consultation.

Defendants ask that I dismiss all Doe Defendants. The case they cite to support

their position, *Culp v. Williams*, dismissed unnamed parties at the motion for summary

judgment stage, noting that "the Federal Rules of Civil Procedure d[o] not permit such

actions against unnamed defendants following a suitable length of time for the plaintiff to

identify the John Does." 456 F. App'x. 718, 720 (10th Cir. 2012) (unpublished).

However, at the motion to dismiss stage, it is appropriate to permit this claim against

Medical Doe Defendant(s) to move forward to give Mr. Tillmon an opportunity to

ascertain the identities of this defendant(s).

Mr. Tillmon also alleges that Defendant Douglas County is responsible for having

an improper protocol in place for ensuring appropriate continuity of Mr. Tillmon's care.

Stating a cognizable 42 U.S.C. § 1983 claim against Douglas County requires Mr.

Tillmon's pleadings to meet the applicable entity liability requirements. Under entity

liability principles, Douglas County cannot be held liable because it employed medical

personal who violated a plaintiff's constitutional rights. Instead, "[t]o establish liability,

a plaintiff must show (1) the existence of a custom or policy and (2) a direct and causal

link between the custom or policy and the violation alleged." *Jenkins v. Wood*, 81 F.3d 988, 993 (10th Cir. 1996). An entity policy can be a policy statement, ordinance, regulation, or decision officially adopted and promulgated by an entity's officers or it could be the persistent and widespread practices of officials. *Starret v. Wadley*, 876 F.2d 808 (10th Cir. 1989).

Mr. Tillmon alleges that "Defendant County of Douglas operated a custom, policy or practice within its County Detention Center that was inadequate and insufficient to maintain Plaintiff's continuity of mental health care, or failed to implement an adequate and sufficient protocol that would ensure appropriate continuity of care for Plaintiff, the entire time while he was at Douglas County Detention Center." ECF No. 1 at ¶24. The Tenth Circuit has made clear that negligence is insufficient to meet the requirement of "deliberate indifference," *Smith v. Cummings*, 445 F.3d 1254, 1258 (10th Cir. 2006). Arguably, a failure to implement a policy for ensuring continuity of Mr. Tillmon's prescription could be a negligent failure. However, Mr. Tillmon alleges that Douglas County's failure to provide his pre-prescribed medication was deliberate. ECF No. 1 at ¶24.

Moreover, the Supreme Court has established that the government has an obligation to provide medical care to its prisoners: "This is true whether the indifference is manifested by prison doctors in their response to prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). In addition to alleging that Douglas County did not have a system in place to ensure

continuity of care, Mr. Tillmon alleges that his subsequent requests for medical care were ignored or rejected. If Douglas County indeed does not provide treatments that have been previously prescribed to its inmates or ignores requests for treatment of the serious medical needs of inmates being transferred into the facility, whether through formal policy or a persistent and widespread practice, then it would run afoul of the Supreme Court's dictates in *Estelle*. Thus I find that Mr. Tillmon will have sufficiently pled an Eighth Amendment claim against Douglas County once he amends his complaint to properly name the county as a party.

      b) <u>Broken Hand.</u>

Mr. Tillmon's second claim is for delay in medical treatment to his broken hand after an altercation with another inmate. This claim is against an unnamed prison official at the DCDC. He states that Deputy Defendant Doe "placed Plaintiff in a segregation cell, left him there for hours instead of taking him to the infirmary to be treated medically for the injury that had just occurred to his hand, after Plaintiff was made to defend himself from a White inmate attacker within the Detention center; his hand was broken in that altercation." ECF No. 1 at ¶19. Mr. Tillmon also states that he was left in segregated confinement for eight hours until a nurse saw him on a routine med-line run. The nurse "after taking one look at Plaintiff's hand" recognized that it was "severely broken," determined that it couldn't be treated within the detention center and transferred him to Castle Rock Adventist Hospital in Castle Rock, Colorado. *Id.* at ¶¶20, 23. "[D]uring that prolonged 8-hour wait, Plaintiff's hand became overly and severely swollen, he was in excruciating pain the whole time that sometimes caused him to

partially black and pass out, however he had repeatedly begged and pleaded for the Deputy Doe Defendant(s) of the Detention Center to retrieve medical attention for him." *Id.* at ¶21. He alleges that the Deputy Doe Defendant(s) ignored or refused to report his requests for medical care. *Id.*

"Delaying medical treatment can violate the Eighth Amendment if the delay itself 'reflect[s] deliberate indifference which results in substantial harm.'" *Anderson v. Colorado, Dep't of Corr.*, 848 F.Supp.2d 1291, 1299 (D. Colo. 2012) (quoting *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993)). The substantial harm requirement "may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir.2001). "A prison medical professional who serves 'solely . . . as a gatekeeper for other medical personnel capable of treating the condition' may be held liable under the deliberate indifference standard if she 'delays or refuses to fulfill that gatekeeper role.'" *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir.2005) (quoting *Sealock*, 218 F.3d at 1211). However, "the subjective component presents a high evidentiary hurdle to the plaintiffs: a prison official must know about and disregard a substantial risk of serious harm." *Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006).

I find that Mr. Tillmon sufficiently alleges that the delay in treatment of his broken hand caused him substantial harm. Though he does not allege any permanent damage from the delay, he does state that he was in considerable pain from the delay in treatment. He states that his condition worsened over the eight hours between his injury and seeing a nurse, and that his condition was severe enough that he needed to be transferred outside of the detention center for treatment once identified by medical

personnel.  Mr. Tillmon's claim against this Deputy Doe Defendant is for refusing to fulfill his gatekeeper role, and his allegations that he repeatedly asked for medical treatment suffice to show that this defendant could have intentionally disregarded a substantial risk of harm to Mr. Tillmon.  I find that Mr. Tillmon has sufficiently pled this claim against the Deputy Doe Defendant, and I will permit him to keep the Deputy Doe Defendant as a defendant so that he has an opportunity to ascertain this defendant's identity.  I note, however, that Mr. Tillmon does not allege that the Deputy Doe Defendant was acting pursuant to a Douglas County policy or practice in failing to fulfill the gatekeeper role.  Therefore, I construe the Eighth Amendment claim for deliberate indifference against Douglas County to only be for Mr. Tillmon's inability to access mental health treatment at DCDC.

2)  <u>Equal Protection.</u>

Mr. Tillmon alleges that prison officials at the DCDC discriminated against him because he is black.  Mr. Tillmon argues that he was treated differently than similarly situated non-black inmates.  He alleges that prison officials placed him in a housing unit knowing he was likely to be targeted because of his race, failed to intervene when he was harassed or attacked because of his race, and then punished him more harshly than non-black inmates engaged in the same altercation when he responded in self-defense.  ECF No. 1 at ¶¶ 13-17, 34-35.  For example, he alleges that he was written up "for 'disturbing the pod' for banging on his cell door for the guard to open it during open day room time – after another White inmate intentionally violated the rules by crossing a yellow-line boundary barrier to close Plaintiff's door just to spite him."  *Id.* at ¶43.  He also alleges

that "Defendant Young gave Plaintiff 60 days in the Hole for fighting a White inmate; but the other culprit, Defendant Young gave only 3 days in the Hole for the exact same fight." *Id.* at ¶45. He further alleges that Ms. Young, as the hearing and sanctioning officer in plaintiff's disciplinary hearings was aware that the altercations involving plaintiff involved racial targeting and that he was punished more harshly than non-black inmates but nonetheless found Mr. Tillmon guilty of every infraction charged against him. *Id.* at ¶36. He alleges that he was targeted "pursuant to Douglas County's custom and practices of racially harassing and targeting him due to his being a minority, his race or his ethnicity." *Id.* at ¶58.

To establish a violation of the Equal Protection Clause, a plaintiff must allege that a defendant acted with the intent to discriminate against plaintiff because of the plaintiff's protected status. *Washington v. Davis*, 426 U.S. 229, 241 (1976). To demonstrate an intent to discriminate, Mr. Tillmon states that "from the moment [he] was transported by the Deputies['] escort of him from Intake into [DCDC's] general population (GP) dormitory area," Deputy Sheriff Officers and inmates both "targeted Plaintiff speaking or yelling absurdities and vulgarities at him, such as 'nigga,' 'nigger' and other racially derogatory terms." ECF No. 1 at ¶65. The Deputies "laughed at the slurs yelled at Plaintiff and told him 'that's just how it is and always been here' so you will have to 'get use [*sic*] to it.'" *Id.* at ¶66.

I conclude that taking the above allegations as true, Mr. Tillmon has stated a claim for a violation of his equal protection rights, and that the derogatory statements made to Mr. Tillmon by prison officials are sufficient to demonstrate an intent to

discriminate against Mr. Tillmon because of his race. I also conclude that Plaintiff has sufficiently alleged that similarly-situated individuals of different races were treated differently, and that such treatment was a result of a widespread and persistent custom or practice. *See Powells v. Minnehaha County Sheriff Dep't*, 198 F. 3d 711, 712 (8th Cir. 1999); *Weatherall v. Scherbarth*, 208 F.3d 228 (10th Cir. 2000).

3) <u>Due Process Violations in the Issuance of Infractions.</u>

Mr. Tillmon also asserts that he was denied due process in the issuance of his disciplinary infractions. ECF No. 1 at ¶¶ 35-46. He states that he never received a response to any of the 23 appeals that he filed challenging each of the institutional violations he received at Douglas County Detention Center while he was there. *Id.* at ¶46.

As a threshold issue, to claim a due process violation, Mr. Tillmon must show that he has a protected liberty interest that would entitle him to procedural protections. In the prison context, a state's laws or regulations may in certain circumstances create liberty interests that are protected by the Due Process Clause. For example, the Supreme Court held in *Wolff v. McDonnell* that a Nebraska statutory provision created a liberty interest in a shortened prison sentence that could result from good time credits where the statutory provision provided that the credits were revocable only if the prisoner was guilty of serious misconduct. 418 U.S. 539, 558 (1974). The Supreme Court has held that these liberty interests will be limited to freedom from restraint which "impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 481 (1995) (holding that a prisoner's

discipline in segregated confinement "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest").

Mr. Tillmon does not allege that the disciplinary infractions he received resulted in any type of atypical or significant hardship. Nor does he allege that they affected the duration of his sentence, or that they will have any continuing effect on his ability to obtain parole. *See Sandin*, 515 U.S. at 487 (highlighting that the case does not present a situation in which the State's action would inevitably affect the duration of the prisoner's sentence). Though the disciplinary infractions may be relevant to Mr. Tillmon's equal protection claims, because there is no protected liberty interest involved, I grant the motion to dismiss with respect to Mr. Tillmon's due process claims.

4) <u>42 U.S.C. § 1985.</u>

Defendant does not move to dismiss plaintiff's claims under 42 U.S.C. § 1985 for failure to state a claim under Rule 12(b)(6), so I will not address this claim at this juncture.

**E) <u>Qualified Immunity.</u>**

Defendants assert that they are entitled to qualified immunity. To overcome a defense of qualified immunity, Mr. Tillmon must establish "(1) that the defendant's actions violated a constitutional or statutory right and (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Toler v. Troutt*, 631 F. App'x 545, 547 (10th Cir. 2015) (quoting *Serna v. Colo. Dep't of Corrs.*, 455 F.3d 1146, 1150 (10th Cir. 2006)). For the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or a clearly established weight of authority from

other courts. *V–1 Oil Co. v. Means*, 94 F.3d 1420, 1423 (10th Cir. 1996). This means

that the "[t]he contours of the right must be sufficiently clear that a reasonable official

would understand that what he is doing violates that right." *Id.* (citing *Anderson v.*

*Creighton*, 483 U.S. 635, 640 (1987)).

Defendants cite case law to explain what qualified immunity is. Other than that,

defendants offer no law to support their position that the individually named plaintiffs are

entitled to qualified immunity. *See* ECF No. 15 at 9-10; ECF No. 31 at 10. They offer

no arguments and no law to the point of whether a reasonable official in the position of

defendants would have been aware that their alleged conduct constituted a constitutional

violation for each claim. It seems that defendants only raise the issue of qualified

immunity to preserve it from waiver. Mr. Tillmon's brief, on the other hand, is replete

with citations to cases that he states support his position that the law was clearly

established in reference to each alleged constitutional violation. ECF No. 26. I have not

determined whether the law that Mr. Tillmon cites does indeed support his position, as I

will not decide whether any claims should be dismissed based on qualified immunity

without any briefing from defendants.

**ORDER**

1.  The recommendation of the United States Magistrate Judge, ECF No. 42, is

    ACCEPTED and ADOPTED in part and REJECTED in part.

2.  Defendant's motion to dismiss, ECF No. 15, is GRANTED in part and DENIED in

    part. The motion is GRANTED as to the injunctive and class-wide relief plaintiff

seeks, plaintiff's due process claims and plaintiff's claims under 42 U.S.C. § 1981. It is otherwise DENIED.

3. Plaintiff's motion for the appointment of counsel, ECF No. 43, is denied. Unlike in criminal cases, there is no law providing appointed counsel at taxpayer expense in civil cases. The Court maintains a limited panel of lawyers who occasionally will volunteer to take a civil case without charge on a volunteer basis. However, the Court does not find that this is an appropriate case to search for a volunteer lawyer. As Judge Mix commented, Mr. Tillmon filed a well-written response to the motion to dismiss. *See* ECF No. 42 at 1. He appears to be capable of presenting his issues to the Court.

4. Plaintiff is granted leave to amend his Complaint within **21 days** of the date of this order. The amended complaint must properly designate the party he has previously named as County of Douglas. It should not repeat claims that have now been dismissed.

DATED this 27th day of March, 2019.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge